

FILED
LODGED
RECEIVED   MAIL

NOV 13 2024

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY
DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

Kris Briscoe, Pro Se §
      Plaintiff, §

§ CASE NO.: 2:24-cv-1888-JLR

§
§ **COMPLAINT FOR EMPLOYMENT**
v. § DISCRIMINATION; ET AL
§
§ **Jury Trial Demanded**
Gavin Hepburn, Individual (WA); Bethany §
Reyes, Individual (WA); Amazon.com §
Services, LLC;Amazon.com, Inc. §
§
Add'l Individuals/Defendants: §
Kevin Warf (NC); Silvia Valdez (UT); Ryan §
Johnston (CO); Theunis Kotze (CA); Genelle §
Rose (LA); Jasmine Kammer (NC) §
      Defendants. §

## I. PARTIES TO THIS COMPLAINT

*The 8 individual defendants **are all white and/or white-skinned**. Plaintiff is African-American. This will be a common theme with the evidence.*

A.  Plaintiff

Kris Briscoe

PO Box 2721

Olathe, KS. 66061

kribrisc@gmail.com email only

B.  Defendants

Legal address for all defendants: Attn: Legal

Process, 300 Deschutes Way SW, Ste 208,

MC-CSC1, Tumwater, WA 98501

subpoena-civil@amazon.com

888-892-7180

Defendant 1:  Amazon.com Services, LLC (Seattle, WA), subpoena-civl@amazon.com

Defendant 2:  Amazon.com Inc. (corporate office Seattle, WA) Add'l Defendant, Joint Employer, or Third Party, subpoena-civl@amazon.com

Defendant 3:  Gavin Hepburn, Individually, Regional Service Leader, HCE[1] (Seattle, WA), hepburng@amazon.com

Defendant 4: Bethany Reyes, Individually, Head of ERC, HCE (MHLS) (Seattle, WA), bethanyr@amazon.com

Defendant 5: Theunis Kotze, Individually, Sr. Manager, HCE (Long Beach, CA), kotzet@amazon.com

Defendant 6: Kevin Warf, Individually, MHLS Team Leader (Clayton, NC), kwwarf@amazon.com

Defendant 7: Silvia Valdez, MHLS Team Leader (Salt Lake City, UT), sivaldez@amazon.com

Defendant 8:  Ryan Johnston, HR, HCE (Colorado Springs, CO), rynjh@amazon.com

Defendant 9: Genelle Rose, MHLS Team Lead (Monroe, LA), genellr@amazon.com

Defendant 10: Jasmine Kammer, HR, HCE (Charlotte, NC), crssj@amazon.com

At all times mentioned herein, each of the Defendant's employees referenced in this Complaint were the agents, servants, and employees of Defendant.


C.  Place of Employment

 [Remote Work covering multiple states] reporting into corporate (Seattle, Washington); assigned to managers in multiple states.

*Introduction to Work Environment:*

*It was remote, however, the work was heavily monitored.  As a Sr. ERC Associate, the Plaintiff was responsible for helping the base of 1 million or so employees with their HR inquiries and/or HR related tasks.  Amazon is ran uniquely, somewhat dark in the sense that they allegedly "punish" employees, at least from the Plaintiff's perspective.  For instance, a lot of punishments happened after she used her voice.*

---

[1] HCE = Highly Compensated Employee

**TABLE OF CONTENTS**

I.  PARTIES TO THIS COMPLAINT                                      1

II. DESIGNATION OF PLACE OF TRIAL                                  4

III. BASIS FOR JURISDICTION                                        4

IV. COMPLAINT                                                      4

V. NATURE OF THE CLAIM                                             4

VI.  FACTUAL ALLEGATION (STATEMENT OF THE CLAIM)                   5

VII.  DISCRIMINATION CLAIM                                         6

VIII. EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES               16

VIIII.  FLSA COMPLAINT                                            17

X.  EQUAL PAY CLAIM                                               18

XI.  WRONGFUL TERMINATION (AFTER FAILED FORCE OUT)               19

XII.  DEFAMATION                                                 20

XIII.  INDIVIDUALS                                               24

XIV.  NEGLIGENCE                                                 30

XV.  SUMMARY                                                     33

XVI.  SUMMARY OF COUNTS                                          35

XVII.  EVIDENCE                                                  36

XVIII.   CERTIFICATION AND CLOSING                              37

## II. DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the Federal Court in Seattle, Washington as the place of trial.  Plaintiff is respectfully requesting virtual hearings until the trial date.  Plaintiff is respectfully asking for a jury trial date to be scheduled between May 2025 and September 2025.

## III. BASIS FOR JURISDICTION

Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § § 2000e to 2000e-17 (race, color, gender, religion, national origin).

Title VII 703a, 42 U.S.C. § 1981, 42 U.S.C. § 2000e et seq.

Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. § § 621 to 634.

Fair Labor Standards Act, as codified, 29 U.S. CODE § 207; FLSA §215; FLSA §218c(a)(2); et al FLSA

Diversity of Jurisdiction as applicable for Equal Pay Act; Civil Conspiracy; Blacklisting; Wrongful Discharge, and Negligence (Tort Law), Defamation of Character (libel and slander); Invasion of Privacy; Breach of Contract.

## IV.  COMPLAINT

COMES NOW Plaintiff, Kris Briscoe ("Briscoe" or "Plaintiff"), Pro Se status, and hereby states and alleges as follows for her cause of action against Defendants Amazon.com Services, LLC ("LLC"); Amazon.com, Inc. ("Inc"); and all named eight Individual Defendants recorded herein, and will be referenced as "Defendants".  The Plaintiff is prepared to present evidence at a hearing or during the trial to support all statements.

## V.  NATURE OF THE CLAIM

1.  This is an action for legal and equitable relief to redress the deprivation of the Plaintiff's civil rights due to race, color and gender discrimination, and hostile work environment; and for retaliation and

wrongful separation; and for age discrimination and, an equal pay violation, for civil conspiracy, blacklisting, and et al applicable laws.

2.  This is an action also for legal and equitable relief to redress the deprivation of the Plaintiff's civil rights pursuant to FLSA and wrongful discharge (public policy reporting); negligence (Tort Law); defamation of character (libel and slander), invasion of privacy, breach of contract, and et al damages and et al applicable laws.  The Plaintiff's United States Constitutional Rights were violated, and the evidence will show that the defendants allegedly intentionally crossed a boundary and made their attacks personal to try to personally ruin the Plaintiff, and her career.  The Plaintiff believes that all of these causes of actions listed in #1 and #2 included actions on the part of the defendants and individuals that were intentional, malicious, vicious, with wanton, and egregious.  All defendants and individuals named were in a role and able to take tangible actions against her.

3.  Most importantly, the Plaintiff will present details that point to a lack of respect by the Defendants, for the societal value of the equal employment opportunity.

4.  Managers can be **individually** liable for violating an employee's rights when there is a conspiracy to violate their rights.  There was a conspiracy during Plaintiff's employment, and blacklisting and other issues, once it ended.

## VI.  FACTUAL ALLEGATION (STATEMENT OF THE CLAIM)

5.  Plaintiff is also seeking **individual** liability: discrimination due to race, color; harassment due to color, race, sex; defamation of character; negligence; all FLSA claims; retaliation; civil conspiracy; blacklisting; invasion of privacy; breach of contract.  Amazon and the individual defendants, allegedly acted in a corrupt manner.  Plaintiff will include authorities in future pleadings once an answer is provided.

## BACKGROUND FACTS:

1.  Plaintiff interviewed on 2/9/22, and received a same day offer.  She accepted the offer on 2/10/22. She was hired by Amazon on March 21, 2022 as a Seasonal ERC Associate.  She was hired as regular full-time (Class F) on October 1, 2022.

2. Plaintiff's picture was shown and accessible by anyone at Amazon.  Her picture was also included on most of her resumes, as recorded on the EEOC Charge.

## VII. DISCRIMINATION CLAIM

A.    The discrimination conduct of which the Plaintiff complained about in this action includes:  1. Failure to hire; 2.  Failure to promote; 3. Harassment/hostile work environment; 4. Unequal terms and conditions of employment; 5.  Retaliation; 6.  Blacklisting; 7. Termination of employment.

B.    It is my best recollection that the alleged discriminatory acts occurred from March 21, 2022 and ongoing through today's date (2024)…

C.    Plaintiff believes that defendants are still committing these acts against her.

D.    Defendants discriminated against her based on my: race; color; gender/sex; age (over 40).

E.    The facts of the Plaintiff's case are as follows (**Note:**  *This isn't a comprehensive list, however, this list includes material facts.*)

(1).    **Failure to hire:  Age and Race Discrimination**.  The Plaintiff, African American female over 40, applied on amazon.com for a multitude of available and open positions with Amazon on a regular basis beginning in 2020, however, one-off applications were submitted prior to this time frame.  The positions were primarily in HR and the Plaintiff was qualified.  At no time during 2020 to February 2022 was the Plaintiff contacted for any of her applications, and instead she was denied the opportunity.  She was denied while they continued to interview, and ultimately filled the positions with predominately younger and non-African American candidates, which the Plaintiff verified once she started as a seasonal employee in 2022[2].  The Plaintiff complained to corporate about a failure to give her an EEO from on or about mid 2022 through November 2023.  Exhibits provided at a hearing or trial.

---

[2] The Plaintiff is able to provide evidence of these facts.  The Plaintiff subpoena for records will also prove this fact.

**2. Failure to promote: Age and Race Discrimination.** Plaintiff, African American and over 40 applied for a multitude of promotional opportunities throughout her tenure. The positions were primarily in HR. After denying her for the roles, Amazon continued to interview. They filled the roles with predominantly white and under 30 years of age candidates..

**<u>SPECIFIC EXAMPLES:</u>**

a. On May 16, 2022, Plaintiff sent an email to Rato Chea, Supervisor and Nesting Supervisor Gomati, regarding, Jessica Holz, a younger white-skinned employee and no HR experience being offered a FT role; yet Plaintiff who applied a multitude of times and is experienced isn't offered anything.

b. On or about June 10, 2022, Plaintiff interviews with Keri Upchurch, white female 30's (who reports to Rato Chea) for an HR Speciality position, which is hiring approximately 40 to 45 employees. She wasn't selected for the role. They continued to interview, and hired the majority as younger candidates. Plaintiff is qualified to perform the role, yet she wasn't selected. The Plaintiff complained to corporate about a failure to give her an EEO from on or about mid 2022 through November 2023.

c. Prior to Plaintiff starting with Amazon, and while employed there during most of 2022, they would advertise hundreds of job opportunities, and a good portion of those openings were in HR. This is the reason why she gave up her almost three years of tenure at another brand employer to accept a seasonal role. To explain the gap during late 2022 and early 2023, Amazon did lay off a lot of employees, however, they began to actively start hiring again later in 2023. Their activity with promotions was ongoing.

d. She applied for multiple HR Investigator roles on or about September 2023, a role she fulfilled for 6 years in the tech industry for e-commerce retailers like Amazon, yet she was denied the Sr. Investigator role (#2439321) on 10/16/23, (after emailing Drake Dorm, HRBP, white male 30's, regarding being treated fairly). The Plaintiff believes that younger and non-African American candidates were selected. The role is filled primarily with that demographics.

e.  Whenever ERC Leadership hand selects employees for growth opportunities, Plaintiff doesn't remember a time when a black person was selected to become a Subject Matter Expert or lead a Pilot.  Not only do they have full control over who they select, they also have full control over hurting the ones they don't want to grow (allegedly tampering with metrics, setting them up for failure, etc.).  Plaintiff remembers hearing her past Amazon supervisor, telling her that Amazon does things to employees that he isn't sure is legal.

f.  As you look through the corporate Phonebook, the images in professional and higher roles were typically non-black.  When the Plaintiff applied for the roles that she was qualified to perform, she was instantaneously disqualified due to her race and/or age.

**3.     Harassment/hostile work environment:  Race, age and gender discrimination.**  Plaintiff, who is an African American female and over 40, was subjected to harassment based upon her race, age and gender.  The Plaintiff complained about the unwelcome harassment, which led to an even more hostile work environment after complaining of Title VII, FLSA and other concerns.  She was (1) denied promotion opportunities; (2) treated inequitably with pilot and other career growth options; (3) removed from email lists and other resources; (4) never had any disciplinary action, but was given a final written warning; (5) wrongfully terminated on the same day she complained again to corporate about the unwelcome harassment by Gavin Hepburn, Regional Service Manager in Washington.  All of the defendants attributed to the harassment and hostile work environment, which included turning a blind eye to it, and allowing it to continue.  She was harassed on almost a daily basis by Team Lead Silvia Valdez, and often by Team Manager, Kevin Warf.  Plus ongoing harassment after the employment ended, which makes it personal, and all defendants should be held responsible as individuals as a result.

**SPECIFIC EXAMPLES:**

a.  During training and nesting, March 2022 through July 2022, Plaintiff would try to participate in training, and she was ignored and/or mocked, unlike her white counterparts.  For example, on or about April 2022, as the Plaintiff was sharing a story tied into the training, after she was done, Mary

Benson, another trainee, mocks the Plaintiff and insinuates something negative[3]. It didn't apply to the Plaintiff, and even if it does, it is inappropriate for an employee or any human being to be mocked for it.

b. On 3/29/22, Plaintiff emailed her trainer to inform her that she didn't feel welcome to participate in training. This was due to a hostile environment.

c. 3/30/22 Plaintiff requested to transfer to another class. It was denied.

d. On 6/13/22 Plaintiff informed Rato Chea, Supervisor, that she passed her occupational exam. He ignored her. However, she sent the same email to a Professional African American, and they congratulated her. Chea has a history, during her tenure, of not promoting blacks to report to him.

e. On 6/22/22 during training nesting, Annie McChristian (white female late 20's or early 30's), another Wave 5 trainee, made a comment about racism to mock the Plaintiff during their team meeting.

f. On July 13, 2022, Plaintiff was assigned to Kaleb Wayne (a white male in his 30's) as a Mentor. Plaintiff was open-minded, however, based upon Kaleb Wayne's response she felt like he was more focused on not being her mentor. Plaintiff reached out to corporate regarding her overall discriminatory experience. (Also **Age Discrimination**).

g. On August 3, 2022, Plaintiff sent an email to Recruiting Manager Hope (Kalesh Carter's manager) seeking to get the correct status on the HR Speciality Role to DENIED. This was the only role in which she was selected to interview. The only option is to withdraw. This wasn't resolved until over a year later, after Plaintiff made several requests.

h. During nesting on or about mid to late September 2022, some of Wave 5 colleagues were overt in their unjustified hostility towards the Plaintiff, including purposely excluding her from a team chat on Slack (Bethany LaPorte white 30's); and creating the chat after another employee asked for someone to add the Plaintiff to the existing Wave 5 team chat on Chime platform, and Mary Benson publicly denied adding the Plaintiff. A lot of hostile actions, and the Plaintiff just took it in silence.

---

3 Mary Benson referenced something protected by ADA, and this will be shared at the trial (in order to offend the general public).

She doesn't know any of these people, and there wasn't any reason for them to act in this manner. It was tough experiencing constant exclusion due to her race.

i.  9/3/22 Malik Asante, Team Lead, was transparent with Plaintiff and stated Rato Chea and Anilkumar Ghule doesn't want her to convert due to her discrimination complaints. In front of all the ERC Team Leads, Rato Chea and Anilkumar Ghule were vocal about this fact. Her white counterparts were treated better.

j.  On November 2, 2022, the punishment for expressing another concern (on 10/29/22), was to cause problems with her VPN. She's worked from home since 2019, and never had any problems like she experienced with a VPN or internet for that matter and no issues on her other devices during this period. The VPN issue was due to her expressing another concern. Amazon was behind it. It felt staged.

k.  On November 12, 2022, she noticed that there is an attempt to sabotage her metrics.

l.  On 11/15/22, Plaintiff emails her team lead regarding the drastic change in her metrics.

m.  11/15/22, Plaintiff files an Ethics complaint.

n.  On 11/15/22, Plaintiff receives an email about voluntary layoffs (punishment).

o.  On 11/17/22, Plaintiff had to follow-up with Anilkumar Ghule and Rato Chea regarding the expense report she completed on November 10, 2022. It was missing from the platform, and she didn't receive any messages about it being approved and processed. (Since it disappeared, this was very concerning to the Plaintiff, due to all the other tactics to retaliate against her).

*NOTE: On or about late November or early December 2022 through late May 2023, she was assigned to Lake Adkins, a 27 year old caucasian male (a gentleman) who displayed grace towards the Plaintiff. Even if he is included as a witness and says anything negative about the Plaintiff, she is placing this on the first complaint, that she will not go against Lake Adkins, no matter what he says. It is part of her core values to focus on the greater good, and he is a good person. She wants the very best for him in his life.*

p.  The Plaintiff was abruptly taken off of Lake Adkins team around late May 2023, on or about the same time as the start of the **"Rosa Parks Revisited[4]" civil conspiracy** that involves Amazon and others [MOTION TO SEAL].

q.  The experience with her new Team Lead, Silvia Valdez, was the complete opposite of Lake Adkins, and it felt intentional.  Plaintiff just dealt with the issue of secretly removing time off her time card (late July 2023), and the ERC Leadership Team retaliated against her for complaining.  Now during October 3, 2023 through November 2023, the environment was so hostile against her that Silvia Valdez and Kevin Warf started playing mind games with her by showing her things that she wanted, but couldn't have (opportunities, additional income opportunities, schedules, etc).  It was very immature and unprofessional.  It was personal.  Their behavior coincided with the 10/3/23 meeting with Hepburn (final written warning for defending against defamation).

r.  On October 23, 2023, Plaintiff was denied beta testing participation, and it was due to her discrimination complaints; however, pre-complaints on 3/28/22, Plaintiff was able to participate.

s.  On August 7, 2023 and moving forward, the ERC Leadership team used silent treatment against the Plaintiff.

t.   On August 11, 2023, Plaintiff met with Kevin Warf, and he was hostile towards her.  She sent an email to the corporate Black Leaders after the meeting (Amazon.com, Inc.) sharing her FLSA, Defamation and Title VII concerns.

u.  On August 15, 2023, the Plaintiff met with Ryan Johnston (white male 30's, Amazon.com, Inc. Investigator) to discuss her FLSA, Title VII, Defamation concerns; despite Plaintiff's goal to speak to Black Corporate Leaders.

v.  The conduct was severe and pervasive enough to create a work environment that the Plaintiff pursued strangers at Amazon to get help.  The conduct was intimidating, hostile and abusive, especially in light of the fact that the Plaintiff asked the leadership to stop harassing her, and they continued to do

---

[4] Rosa Parks Revisited Civil Conspiracy is an alternate name used to reduce any additional pain for the public, as the true name of the conspiracy includes a racial slur.

it despite her request to stop it.  The conduct was intimidating, hostile and abusive, and Amazon.com, Inc. was aware of it and didn't stop it.  In fact, it got worse for the Plaintiff whenever she voiced a concern.  A reasonable person would consider the work environment for the Plaintiff as intimidating, hostile, and abusive.

**4. Unequal terms and conditions of my employment:   Race, Age and Gender Discrimination**. Plaintiff is African American and over 40, and white counterparts, predominantly younger, were provided with more favorable terms and conditions of employment.  (1) They were able to participate in pilot programs; (2) they were able to experience training and work without harassment; (3) they were able to learn about their assignments in the redesigned organization; (4) they were able to promote into a SME and mentor role; (5) they were able to be considered for promotion opportunities; (6) they were able to be included in email blasts and other resources for all employees of the ERC; (7) male counterparts were able to increase their income, while the Plaintiff wasn't able to do it; et al.  All of which and more, the Plaintiff was excluded due to her race, age and/or gender.

**SPECIFIC EXAMPLES:**

a.  10/11/22  Plaintiff notices that she is excluded from ERC Communication channels, unlike her white coworkers.  She wasn't receiving emails, announcements, etc.  This continued until on or about October 2023.

b.  August 2023 through October 2023, unlike her white counterparts, the Plaintiff also was denied growth opportunities; a failure to promote; extreme harassment; inequitable treatment in terms, conditions and privileges as a result of her complaints.  The Defendants **didn't** tell her any details about her new team or new role as part of the department realignment.

c.  Plaintiff was performing, and unlike her white counterparts, she was set up for sabotage.

**5. Retaliation:**  Plaintiff complained about violation of Title VII and FLSA rights, among other issues.  She complained to the corporate office; the Black Employment Network (BEN) for support; and public policy complaints to the EEOC, FLSA and a lawsuit, which started while she was employed.  The Defendants retaliated by wrongfully discharging her employment on November 10, 2023.

**SPECIFIC EXAMPLES:**

a. 7/8/22 Plaintiff feels that she is punished after making a request to transfer to another team, and her quality[5] assurance score was impacted with an unexpected quality audit, due to the search and unjustified scoring of a 1 out of 1,000 calls scenario.

b. Late August (a couple days or so after expressing concern to corporate), Plaintiff is punished and now is assigned to only take calls, no longer taking chats and calls.

c. The Plaintiff also was punished by ERC Leadership and not able to earn the additional income that her male counterparts were able to earn.

d. After expressing concerns about FLSA violation and Title VII rights, she was given an unjustified single, yet final written warning in October 3, 2023, as part of a conspiracy to force her to resign.

e. On October 21 2023, the Plaintiff informed Ryan Johnston that she was filing a lawsuit.

f. On 11/1/23, served defendants the lawsuit[6] waiver and court documents, incl. EEOC charge.

g. On 11/10/23, her employment wrongfully ended.

### 6. Blacklisting

Briscoe also has substantial circumstantial evidence to show that either the Defendants either directly or indirectly influenced other employers not to hire the Plaintiff as a result of the EEOC charge. Blacklisting is illegal and has caused substantial harm to the Plaintiff. Due to this sensitive nature, Plaintiff is asking for a hearing or to present evidence at a trial, unless the case is sealed.

In Zhu vs. North Central Educational Service District - ESD 171, 2:15-CV-00183-JLQ, WA (2016), Zhu was denied an opportunity with another school after they complained of discrimination with the school that wrongfully terminated them. Zhu later won her Supreme Court case where it was ruled that Blacklisting by employers are unlawful. Zhu was able to win against a summary judgement of Blacklisting by proving circumstantial evidence that inferred that blacklisting did occur.

---

[5] Quality scores, if low, can lead to detrimental outcomes.

[6] The lawsuit was dismissed without prejudice. The Plaintiff had valid concerns about judicial behavior in a region where the voice of blacks are limited. The case has consistently been filed, just no movement no matter how hard the Plaintiff tried.

7. **Termination of employment**

Plaintiff complained about violation of Title VII and FLSA rights, harassment, among other issues. She complained to the corporate office; the Black Employment Network (BEN) for support; and public policy complaints to the EEOC, FLSA and a lawsuit, which started while she was employed. The Defendants made work life hell for her, in an attempt to force her out. The Defendants retaliated by wrongfully discharging her employment on November 10, 2023, shortly after the complaints, and on the same day of her harassment complaint regarding Gavin Hepburn.

## 8.  COMPLAINTS - INTERNAL RESOLUTION ATTEMPTS

*(Applies to all claims):*

*22 ATTEMPTS TO GET HELP*

a.  6/23/22 Plaintiff sent an email to the skip level manager asking to be placed on another team due to the harassment, as she felt ridiculed, insulted, and intimidated, unlike her white counterparts. No change was made.

b.  On or about July 15, 2022, Plaintiff submitted a complaint to Amazon.com, Inc. via Candi Castleberry, Head of DEI, and Beth Galetti, Head of HR, regarding the resistance that she experienced as a result of discrimination and a hostile environment.

c.  On July 21, 2022, Plaintiff emailed another corporate executive expressing her concerns about not getting an equal employment opportunity at Amazon.

d.  On or about July 28, 2022, Plaintiff filed her official discrimination complaint with HR corporate. (Amazon.com, Inc.)

e.  8/2/22 Plaintiff informs HR of the discriminatory and hostile environment.

f.  On October 4, 2022, Plaintiff emailed HR again to ask why the environment is so hostile against her due to her race.

g.  On October 11, 2022, Plaintiff sent an email to Drake Dorm and asked if Amazon ever considered offering hostile prevention training.  If there is a harassment policy, it is unknown by ERC Leadership and certainly not followed.

h.  10/29/22  Plaintiff sent hostile work environment concerns to Drake Dorm, HRBP.

i.  On November 17, 2022, Plaintiff escalated to corporate (Amazon.com, Inc.) to resolve the sabotage to her metrics.  She discovers that one of the Interviewers, Dennis G., for the HR Specialty role, which she was denied, was involved in the alleged sabotage.

j.  On November 22, 2022, Plaintiff expressed to corporate (Amazon.com, Inc.), once again, that she is experiencing discrimination; a lack of an EEO, and a hostile environment.

k.  *November 2022 through May 2023 - assigned to Lake Adkins.*

l.  Late August 2023 or early September 2023, Plaintiff discussed her concerns with corporate (Amazon.com, Inc.).

m.  To emphasize how wrong the discharge was to the Plaintiff.  The Plaintiff was "forced" to send an email to Defendant Kevin Warf, Team Manager around August 2023 that stated she has had a stellar HR history in the tech industry, and she wasn't going to allow him to harass her.  This email was also sent to the African American Leadership in corporate (Amazon.com, Inc).  Instead of stopping the harassment, it got worse for the Plaintiff, and it led to her wrongful discharge that damaged her stellar HR history in the tech industry.

n.  On August 2, 2023, Plaintiff filed an ethics complaint.

o.  On August 3, 2023, Plaintiff felt the environment was so hostile against her that she reached out to the Black Employee Network (strangers to her) for assistance.

p.  On August 11, 2023, the Plaintiff sent an email to African American Leaders and shared her Title VII and FLSA violations with them.

q. On October 3, 2023, she emailed Tonya Hallet and Candi Castleberry to express the concern that she has been fighting hard to have a career at Amazon.  She expressed concerns to corporate (Amazon.com, Inc.) regarding overall inequitable treatment.

r. On October 11, 2023, Plaintiff expressed to Drake Dorm that it shouldn't be hard to be treated fairly.

s. On October 25, 2023, sent email to Taylor Stahl, Investigator Manager (Ryan Johnston reports to him), provided an update on the treatment since the investigation, and she feels retaliated against.

t. On October 27, 2023, Plaintiff has already expressed a concern to corporate regarding inequitable treatment with additional income opportunities; yet Plaintiff witnessed that it is still happening and a male employee is able to increase income.

u. 11/8/23 2:47PM the Plaintiff reported harassment to Amazon.com, Inc. executives via Diversity, Equity and Inclusion VP Candi Castleberry, and via Tonya Hallet who reports to the Head of Human Resources, Beth Galetti.  Gavin Hepburn's intentional attempt to cause harm to the Plaintiff during an important day in her life. (PERSONAL HARASSMENT)

v. On 11/10/23 a.m. the Plaintiff reported harassment to Amazon.com, Inc. executives via Candi Castleberry, DEI and via Tonya Hallet who reports to the Head of HR, Beth Galetti.  She asked if Gavin Hepburn could no longer contact her because of his hatred.  A few hours later, Amazon wrongfully ended Plaintiff's employment.

### VIII.   EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

a. The Plaintiff elected not to have an EEOC Investigation, as she preferred to sue in court.  It is my best recollection that I filed charges with the EEOC on 8/29/24 (related 3rd party/employers blacklisting tied into Amazon).  I also filed charges on 6/2/24 and 12/27/23.

b. The EEOC has not issued a Notice of Right to Sue letter for the 8/29/24 related blacklisting charges.  The EEOC has issued a Notice of Right to Sue letter for the 6/2/24 charge on 6/10/24 and 12/27/23 charges on 1/5/24.  Note: This case has been consistently filed (issues with locality).

c. Since filing my charge of age discrimination with the EEOC regarding the defendant's alleged discriminatory conduct: 60 days or more have elapsed.

## VIIII.  FLSA COMPLAINT

### FLSA complaint includes (1) Nonpayment for working off the clock; (2) Max Hours; (3) Wrongful Discharge

**1.    FLSA Nonpayment for working off the clock**

a.  During her entire tenure, March 21, 2022 through November 10, 2023, the Plaintiff usually worked without compensation in order to make sure solutions were provided for employees; rarely, and at times, to complete required training; rarely, and at times, to attend ad hoc team meetings during her lunch period.

b.  ERC Leadership was aware of her nonpayment for these hours, yet they didn't resolve it by paying her.  Instead, they decided to retaliate against her by using many tactics, including her time.  Their goal was personal ruin.

c.  FLSA Nonpayment working off the clock hours - Failure to pay for a total of at least 260 hours at one and one-half of Plaintiff's regular rate for the hours worked in excess of 40 hours per week from March 21, 2022 through November 10, 2023.  This is in addition to any already paid out overtime during that period.

**2.  FLSA MAX HOURS**

a.  FLSA Max Hours violation.  Plaintiff worked July 16, 2023 through July 22, 2023, and reported her hours as normal using the online time clock.  In fact, you don't type in your time, you just click a button to show you are starting or ending your day.  So it is considered natural punches.

b.  Plaintiff isn't aware of when the secret time removal by Silvia Valdez started, but it was discovered on or about July 26, 2023, and it impacted the July 28, 2023 paycheck.  It violated 29 U.S.C. & 207 FLSA Max Hours.

c.  Hours were missing for the week of July 16, 2023 through July 22, 2023, as they are paid weekly. This has never happened before, and she has had a total of 5 supervisors.

d.  She felt the best solution was to report the missing hours to payroll in order to get paid.  When HR Advisors create tickets, a copy of what they create goes to their Supervisors, in this case a copy went to Silvia Valdez during the evening of July 26, 2023.  The Plaintiff included the proof to show the hours she worked, and also stated that she can provide system proof if required.

e.  The Plaintiff filed an Ethics complaint on August 2, 2023 regarding the FLSA violation, and the lack of integrity and secretly removing time off her timecard.  She also mentioned the history of Title VII rights violations.

f.  To date, Silvia Valdez has not provided a reason for secretly removing WORKED time off the Plaintiff's timecard for her 7/28/23 paycheck.

**3.  FLSA Wrongful Discharge**

a.  Plaintiff was wrongfully discharged on November 10, 2023, after experiencing an aggressive and hostile environment once she complained of FLSA and other violations; filed EEOC charge and lawsuit.  The issues are ongoing.

## X.  EQUAL PAY CLAIM

1.  During August 2023 through November 2023, as part of retaliation, inequitable treatment and discrimination, she is blocked from additional income opportunities, based upon her gender.  She utilized the same skill, effort and responsibility under the same working conditions.  She estimates missing out on approximately a minimum of 31.02 overtime hours per month.  This impacted her equal pay rights.

SPECIFIC EXAMPLES:

a.  There are males working as an HR Advisor in the ERC, specifically Terrell, as a recent example. However, this treatment occurred since approximately July 2023 through November 2023, and there are other male employees who were treated in the same manner.

b.  Males were provided an opportunity to make additional income via overtime, yet the Plaintiff, a female, was denied the opportunities for additional income.  Specifically on October 27, 2023, she noticed that Terrell was able to work overtime after she inquired about OT availability and was told there wasn't any by Genelle Rose.  The males work that is identical to the work performed by the Plaintiff.  Terrell was on her team and worked in the same position.

c.  The Plaintiff wants to know why she was punished and not able to make additional income like her male counterparts, after she complained about the violations of FLSA, Title VII rights, etc.

d.  Plaintiff was paid less wages than her male counterparts as part of retaliation for her public policy complaints.  Her male counterparts were allowed to earn additional compensation via overtime, and she was excluded due to her complaints.  She exuded the same skill, effort and responsibility under the same working conditions.

e.  Plaintiff is owed approximately $1,000 compensation plus damages and penalties, for each month that she was treated in an inequitable manner, specifically August 2023 through November 2023.

## XI.  WRONGFUL TERMINATION (AFTER FAILED FORCE OUT)

### TITLE VII, FLSA, ET AL

1.  10/3/23, Plaintiff was provided with an unjustified "final" and single written warning after making her FLSA, discrimination, retaliation and hostile environment complaints.  The final written warning was part of the civil conspiracy and retaliation.

2.  Even during the 10/3/24 meeting, the Plaintiff felt personally attacked by Gavin Hepburn, on more than one occasion, and Jasmine Kammer allowed it to happen and didn't act in her bystander role.  They also wanted to prevent her from being considered for promotions - since she started applying for jobs again.  During this meeting, she mentioned battling this out in court.  Plaintiff also mentioned the issue with additional income opportunities to Gavin Hepburn.

3.  Her employment was wrongfully separated on November 10, 2023, the same day she expressed a
concern to corporate about harassment by Gavin Hepburn.  The Defendants falsified her termination
paperwork as part of their cover-up regarding the conspiracy.

4. The Plaintiff was discharged despite the adequacy of her work, perfect attendance, adding value by
sharing ideas, and surviving against the ongoing harassment and retaliation attacks.

5.  Plaintiff was wrongfully discharged when she complained about the secret removal of time off her
timecard, in violation of 29 U.S.C. & 218c(a)(2) FLSA Protection for employees and 15 U.S. Code §
2087 - Whistleblower protection and 29 U.S.C. & 215 FLSA Prohibit Acts FLSA.

6.  Plaintiff filed a complaint with federal government on 9/15/23, and internally during August 2023
through October 2023 to executives regarding Silvia Valdez secretly removing time off the Plaintiff's
timecard.  Plaintiff filed a lawsuit on 10/31/23.

7. The Plaintiff is sharing details of the violation, and is about to testify in a trial, and the defendants
were aware that Plaintiff was going to file a lawsuit, as of 10/3/23; again on 10/21/23; and served on
11/1/23, all prior to the wrongful discharge on November 10, 2023.  The Plaintiff participated in such
proceeding by provided details to the employer, government and court.

## XII.  DEFAMATION

**28 U.S.C. & 4101 Defamation and**
**§ 1983 Liability for Defamation.**

1.  The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar
claim alleging that forms of speech are false, have caused damage to reputation or emotional distress,
have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any
person.

2. In Wayt v. DHSC, LLC, 97 N.E.3d 903, 2017 Ohio 7734 (Ohio Ct. App. 2017), Wayt worked as a
registered nurse for Affinity Medical Center in Ohio for 24 years before she was terminated in retaliation
for her protected union organizing activity.  The employer defamed her career and reputation by making a

complaint about her to the Nursing Board.  A jury found that this was defamatory and awarded her damages.

3. As in this case, Plaintiff complained about public policy violations.  Amazon leadership knew that she recently attained her occupational certification, and she also shared her stellar HR experience in the tech industry.

4. As part of their personal ruin towards the Plaintiff, Silvia Valdez, placed defamatory comments on a third party platform (Slack) on or about July 27, 2023.  Kevin Warf ignored her requests to meet with him on July 27, 2023.  ERC Leadership refused to remove those comments when the Plaintiff requested it.  Amazon is ruthless.  Not only can other Amazon employees read these comments, but so can Slack administrators.  They also verbalized these comments so others can hear them.  Plaintiff has a tech background, and this is a double jeopardy towards her career (Tech and HR).  The other individuals and defendants listed in the complaint were aware of the defamation and either supported it or turned a blind eye to it.  Management can be held liable as individuals for defaming employees.

5. In Thompson v. Bosswick, 855 F. Supp. 2d 67 (S.D.N.Y. 2012), Defendants are seeking a motion for summary judgment, which was denied.  Thompson sued former employer, Bosswick and Sanford E. Ehrenkranz (solely in their capacity as Trustees).  The defendants tarnished Thompson's stellar record in his occupation, by stating that he was getting free services or kickbacks from some of the Trust vendors.  In addition, he was terminated, and ran into issues gaining employment due to his reputation being scarred.

6. As in Thompson v. Bosswick, the Plaintiff's reputation has been scarred by these actions.  It is also supporting the Defendant's effort in blacklisting the Plaintiff.  The Plaintiff is experiencing blacklisting with other employers.  Amazon has caused her irreparable damages.

7. To prevail in a defamation claim, the plaintiff must show that:
    1. The statement was reported as if it was a fact. (Libel and Slander)
    2. The statement is false, and Silvia Valdez was purposely trying to cover the fact that she was setting the Plaintiff up for failure, and was secretly removing time off the Plaintiff's timecard to give a

specific appearance. The Plaintiff has had five different supervisors, and used the same method for handling time since she first started, and even during the first couple of months on Silvia Valdez team. Silvia Valdez did this one week or so after the Plaintiff received a compliment from Kevin Warf (Silvia Valdez manager) regarding her performance, where he asked her about her growth plans. The Plaintiff responded and shared insight with Kevin Warf regarding her history with Amazon which includes experiencing discrimination. All of a sudden, Silvia Valdez is secretly removing time off the Plaintiff's timecard. The Plaintiff caught her by the grace of God, and every act after she was caught turned into one cover up, after another. Literally, the Plaintiff discovered the secret at the end of her shift on or about July 26, 2023 (anywhere between 5:00 pm and 6:30 pm), and at the beginning of her shift the next day on July 27, 2023 at 10:00 am (which is her scheduled 1x1 meeting with Silvia Valdez), Valdez is cancelling the meeting and posting this insult to cover her actions. This was an assault and part of the civil conspiracy. It's obvious that she was trying to cover up her actions that were discovered. (False Light; Condemnation)

3. The statement was an absolute insult to the Plaintiff. She has never been so insulted in her entire life! The way she carries herself at work, and often speaks of her faith, to make this type of comment about her, is purposely starting an unnecessary war. It was gross, egregious, disgusting, intentional, malicious, vicious, an out-of-this world type of comment to make, because Silvia Valdez was caught doing something that she was doing in secret. Silvia Valdez was negligent in her actions, and she has no right to insult another human being who has shown nothing but dedication to Amazon. (False Light; Intentional Damage; Libel and Slander; Condemnation)

4. The statement was negligently published on Slack group messaging platform. Which is totally offensive, because others can read it, including Slack Administrators. Silvia Valdez was malicious, vicious, accusatory, wanton, and intentional in her actions, because she cancelled the 1x1 that was scheduled for the Plaintiff at the same time she wrote the insult on Slack. She could have addressed the Plaintiff privately, instead of making false accusations. However, this didn't happen, because Silvia Valdez was intentionally malicious. Kevin Warf also directly aided and abetted in this cover-up. Genelle Rose aided and abetted indirectly. The other defendants turned a blind eye to it. (Libel and Slander; Condemnation)

5. There was harm done to the stellar HR work history that the Plaintiff has had in the tech industry. Years of hard work just flushed down the drain by someone she was only assigned to for two months or so,

at the time of the incident.  The damage done is **irreparable**.  It led to wrongful separation, blacklisting, among other violations.  (Reputation & Intentional Damage; Emotional Distress; Criticism; Dishonor)

8. Statements that are defamatory still will not subject an employer to liability if those statements were privileged.  Qualified privilege can be lost if any of the following are true:

1. It was malicious, and that was the intent.  The reason why she posted those messages instead of speaking to the Plaintiff privately was to humiliate her and harm her reputation.  It led to wrongful separation, blacklisting, among other violations.  It also shows discrimination, hostility and retaliation, which interferes with the Plaintiff's civil rights (Title VII).  Her actions violated FLSA.

2. The statement was made with reckless disregard for the truth, because Silvia Valdez knew when she posted the message that she was purposely trying to cast a bad shadow and false light on the Plaintiff.  This has nothing to do with her wanting to understand something that she was confused by.  She wanted to harm the Plaintiff, and she wanted others to know about it.  If she wanted to know the truth, she wouldn't have cancelled the 1x1 meeting that was scheduled, and instead used the time to post this insult.

3. Publication of the statement was overly broad, and unnecessary.  If there are any concerns that cause a person's character into question, you ask them, or seek assistance in resolving issues.  However, this was never a concern for Silvia Valdez, because she could care less to find out the answer to a rhetorical question.  Her goal was to damage the reputation of the Plaintiff in front of others.  Otherwise, she wouldn't have done it.  It shouldn't have been a statement, it should have been a private conversation, but that is a moot point, because Silvia Valdez followed through on her malicious intent.

Your Honor, if you need more details to help you decide if this claim can move forward, can you kindly schedule a hearing so the Plaintiff can clear up any missing details.

### DEFAMATION SUPPORTING FACTS:

1. However, the next day (July 27, 2023) she walked into Silvia Valdez trying to cover up her actions. The Plaintiff was absolutely shocked by Silvia Valdez' behavior.  She immediately stated, you will not insult my character, I will speak to your manager.

2.  Unfortunately, Kevin Warf ignored her requests to meet with him on July 27, 2023, and this was very alarming to the Plaintiff.  A week or so ago, Kevin just gave her a performance compliment and asked her about her growth plans, and now he is ignoring her.  He also pretended not to receive an email she sent to him, when Outlook states otherwise.

3.  On July 27, 2023, Silvia Valdez, new Team Lead, after approximately two months, gives an insult of a lifetime to the Plaintiff, which defamed her character.

## XIII.  INDIVIDUALS

1.  Managers can be individually liable for violating an employee's rights when there is a conspiracy to violate their rights. The conspiracy was to force the Plaintiff out due to her FLSA and Title VII complaints, and when that didn't work, they made her work life hell. All named individuals are responsible for their actions not only as agents of Amazon, but as human beings working and residing in America. They are all aware of the U.S. Constitution, and the rights afforded to individuals. As human beings they are responsible for knowing the difference between wrong and right.

### Silvia Valdez

2.  She was the culprit of what lead to the wrongful separation of the Plaintiff, by her unethical behavior with the secret removal of time.  This was personal, why would a manager remove worked hours from a timesheet, by law it has to be paid.  It was part of the conspiracy for personal ruin.

3.  She continuously taunted the Plaintiff almost on a daily basis.  It was intense harassment to interfere and cause hell for the Plaintiff while she was working.  This was during July 2023 through November 2023, and include actions such as:

   a.  the secret removal of time off her timecard during July 16, 2023 through July 22, 2023, thereabouts.  There may be other times unknown to the Plaintiff.

   b.  the defamation of character towards the Plaintiff on or about July 27, 2023

   c.  the constant attempts to set Plaintiff up for failure, and when you do these things to an employee, that is personal: placing her in the set-up for failure queue, unlike her coworkers; cancelling her presentation

even after noticing that she prepared and practiced, and allowing a caucasian employee to make a presentation that has never been done on any team; purposely blocking the Plaintiff from additional income opportunities (August through November 2023), then going out her way to make sure that the Plaintiff knew there were additional income opportunities, by showing them to her on the platform, and if the Plaintiff showed any interest, she would remove the additional income opportunity from her (PERSONAL); she would also advertise it on a board (and she never did this before the Plaintiff complained about her FLSA violations) knowing that the Plaintiff was being blocked from the additional income opportunity (PERSONAL); teasing her by showing her career opportunities that she wasn't eligible to be considered for after she herself caused the single disciplinary action (PERSONAL); playing mind games by having meeting popups when the Plaintiff was no longer on her team (PERSONAL); constantly sending emails to try to takedown the Plaintiff (it was non-stop and unnecessary) (PERSONAL); obsessing over when the Plaintiff logged in to start her day, and then taking opportunities to harass her (PERSONAL); making it difficult for the Plaintiff to even change her address; the list goes on. Her only goal was to personally ruin the Plaintiff, and she was obsessed with it. The Plaintiff has exhibits as evidence, and Silvia Valdez should be held responsible as an individual for her intentional violations of laws.

**Kevin Warf**

4. Kevin aided and abetted Silvia Valdez in the timecard issue and the defamation. He also participated in the taunting of the Plaintiff especially by showing her things she wasn't eligible for now due to the disciplinary action. He had never done these things in the past, including showing job opportunities, and being very aggressive in his manner to make sure the Plaintiff saw it, including on 10/3/24, the day she got the warning. (PERSONAL)

5. He also wanted to tease the Plaintiff by playing with her mind. He knew that she was fond of Lake Adkins' leadership style, and Kevin Warf used an opportunity to play a mind game with the Plaintiff. He pretended like there was an opportunity for her to go back on his team, when in fact, he had no plans of placing her back there. In fact, he treated her differently than the other employees when it came to the realignment during September 2023. He didn't provide her the details like he provided to her coworkers.

She was left in the dark. Instead he seized the opportunity to torture the Plaintiff with the lack of schedule options for her. (PERSONAL)

6. Kevin was also very slick in everything he did with the Plaintiff, he even made sly remarks regarding her reaching out to him for assistance. He exuded a level of frustration by her requests.

7. Kevin did a 360 turn around from asking the Plaintiff in July 2023 about her growth plans, and complimenting her performance to now setting her for failure. (PERSONAL)

8. He supported Silvia Valdez in her hostile treatment towards the Plaintiff.

9. This would cause anyone emotional distress, and Kevin should be held responsible as an Individual for his intentional violations of laws.

### Gavin Hepburn

10. The only time the Plaintiff ever was in the presence of Gavin Hepburn is when he acted as the ERC Team Manager (Kevin Warf's role) and also covered his position.

11. The Plaintiff was very cordial towards him and welcomed him to their team meeting (Lake Adkins) for the first time.

12. Other than that, she has never had any contact with Gavin Hepburn, however, during the meeting on October 3, 2023, and moving forward, Gavin treated the Plaintiff as if he knew her.

13. Gavin was mistaken, because he doesn't know anything about her, and this is why he treated her like she was a stereotype. He displayed hatred towards her.

14. In fact, during the meeting on October 3, 2023, he acted as if he expected for the Plaintiff not to respond to the fact that she is getting an unjustified final written warning.

15. Instead of showing compassion, like she is expected to do with employees, he mutilated her. He called her a name, he threatened to leave the meeting, he told her who she was, etc. He did all of this in front of Jasmine Kammer who never stood up as a Bystander.

16. Gavin Hepburn should be held responsible as an Individual, because he watched everything that happened to the Plaintiff and he allowed it. He turned a blind eye, and then it became a self-fulfilling prophecy for him, because he started to believe that the dirty deeds he was committing against the Plaintiff was appropriate. When in fact, it should have been towards himself.

17. The actions that Gavin Hepburn took and allowed are equivalent to seeing an elderly person who needs help, and walking by them, spitting on them and just letting them suffer.

18. Gavin Hepburn aided and abetted in the personal ruin towards the Plaintiff.

19. Gavin Hepburn should be held responsible for his intentional violation of laws.

**Ryan Johnston**

20. Ryan Johnston didn't appear to be truly interested when the Plaintiff was passionately explaining what happened to her, it was if it went in one ear and out the other.

21. Ryan allegedly already had his mind up, and he was just going through the motions.

22. The policy states that you assume positive intent by employees and you treat it as a neutral investigation. Ryan Johnston, however, didn't appear to hear or understand what the Plaintiff stated regarding the defamation. It was like he already had his mind made up.

23. Ryan Johnston was supposed to gather the facts and present his findings to the leadership team, and they were supposed to decide if changes to the policy, etc. are needed.

24. At no time is it stated, that you turn around a concern on the party expressing the concern. If an employee expresses a concern about their character being defamed, how in the world is this the employee's fault? Especially when that employee followed protocol to resolve the matter, but she was ignored. This was part of the conspiracy.

25. Ryan took his focus off of finding a solution or updating a policy, to participating in a conspiracy to harm the Plaintiff.

26. In addition, Ryan Johnston never provided a resolution like the policy states. Instead the plaintiff had to call him. He gave her a generic response with a timeline, but nothing happened by the date he stated. Then he allowed Gavin Hepburn to pretend to be using the October 3, 2023 meeting to resolve this matter, when he fact, this meeting was used to force the Plaintiff out. The evidence provided will show you their true ulterior motive, it had nothing to do with what they stated.

27. In addition, the Plaintiff felt like Ryan was part of the conspiracy, because at the end of the investigation when it was time for a resolution, instead of truly providing a resolution, he instead harmed the Plaintiff.

28. He also participated in the conspiracy in terms of how the write-up was handled. It was out-of-the ordinary. Plaintiff prays that this issue is decided by a trier of fact to determine if it was unethical.

29. He also played with Gavin Hepburn by trying to make the Plaintiff into a slave in order to get her moved to a new manager. It was horrific.

30. Ryan should be treated like an Individual, so he doesn't behave in this manner towards another employee. I doubt if he would like to be treated in the manner in which he treated the Plaintiff.

31. Ryan also aided and abetted Silvia Valdez and turned a blind her towards her conduct. He also turned a blind eye towards the FLSA violation, discrimination, retaliation and personal ruin against the Plaintiff.

## Jasmine Kammer

32. Jasmine is supposed to be an HR person. Jasmine is only focused on management, and it is to a default.

33. She allowed a manager to harass an employee in front of her, and she did nothing about it.

34. In fact, Jasmine was part of the conspiracy, and instead of applying the policy and keeping things fair, she did questionable things in terms of ethics, especially with falsifying the termination paperwork as part of the personal ruin strategy. (PERSONAL)

35. In addition, she adjusted the write-up in a manner that should be decided by a trier of fact. In the Plaintiff's opinion, it was unethical. The Plaintiff believes that a reasonable person would have an issue with it. (PERSONAL)

36. Jasmine should be held as an Individual, because she was aware of these unethical and questionable actions against the Plaintiff, and she did nothing to correct them. She played along.

37. Jasmine aided and abetted in the personal ruin towards the Plaintiff, which violated laws.

## Genelle Rose

38. Genelle Rose should be held responsible as an individual because she chose to involve herself in this matter, when it wasn't necessary.

39. Genelle continued the defamation that was started by Silvia Valdez, as part of the cover up and the conspiracy. The welcome message that she presented to white counterparts, was altered for the Plaintiff, in a way to defame her character again. It was done intentionally and only provided to the Plaintiff. (PERSONAL)

40. Genelle took it too far, and she more than once, humiliated the Plaintiff unnecessarily in front of the team on Slack, unlike her white coworkers. It was part of the conspiracy. (PERSONAL)

41. During a 30 minutes meeting, Genelle mocked the Plaintiff by using a word the Plaintiff used, and saying it at least 10 times, unlike towards her white counterparts. (PERSONAL & PURE HATRED)

42. Genelle Rose also participated in the falsification of the termination document and the termination decision, before she even knew the Plaintiff. (PERSONAL).

43. Genelle Rose should be held responsible as an Individual do to her participation in the conspiracy against the Plaintiff. (PERSONAL)

### Theunis Kotze

44. Theunis Kotze should be treated as an Individual, because he has known about the issues since the beginning, which could be interpreted as him being apart of the internal blacklisting, hostile environment and retaliation that the Plaintiff faced frequently throughout her tenure. He didn't stop it from happening.

45. Theunis Kotze turned a blind eye to the treatment towards the Plaintiff, and he should be held responsible for this act. It was wrong.

46. Theunis Kotze is quite aware that this is a low paying job, yet he allowed highly compensated individuals to treat a low paid employee in this manner.

47. Theunis Kotze should be treated as an Individual. Theunis Kotze aided and abetted in the personal ruin towards the Plaintiff and violated laws.

### Bethany Reyes

48. Bethany Reyes should be treated as an Individual, because she not only turned a blind eye towards the treatment to the Plaintiff including internal blacklisting, hostile environment and retaliation that the Plaintiff faced frequently throughout her tenure. She allegedly participated in the effort.

49. Bethany Reyes is quite aware that this is a low paying job, yet she allowed highly compensated individuals to treat a low paid employee in this manner.

50. Bethany Reyes should be treated as an Individual. Bethany Reyes aided and abetted in the personal ruin towards the Plaintiff and violated laws.

## XIV.  NEGLIGENCE

51.  All named defendants are responsible for their actions as agents of Amazon, and they made decisions within their discretion, and should be held accountable for their actions while performing in a managerial capacity.  They failed to stop the unlawful actions against the Plaintiff.  They are culpable. They crossed the line and made things personal in their treatment towards the Plaintiff with a goal of personal ruin, and hence, should be held accountable as individuals.  It is unacceptable on so many levels to try and personally ruin someone.  The daily terror they conferred upon the Plaintiff was for their enjoyment (and otherwise carried no weight nor value), and it was at the expense of the Plaintiff's career. Evidence will be provided during the jury trial.

52.  Most recently, after the Plaintiff was **abruptly** taken away from a very positive and productive team managed by Lake Adkins, then she was assigned to Silvia Valdez, Team Lead on or about mid to late May 2023.  Everything Valdez did was to harm the Plaintiff.

53.  Silvia Valdez, Team Lead stated an adverse action can happen if the Plaintiff uses her Paid Time Off (PTO) for a personal emergency.  The Plaintiff rarely takes time off and most of her tenure has shown 100% for attendance, and she even lost accrued PTO time during 2022, because she didn't use it.  Yet, she is given a hard time about taking a couple of hours off for a personal emergency.  The Plaintiff couldn't locate Valdez' interpretation of PTO in any policy, so she reached out to Valdez' manager, Kevin Warf, Team Manager on or about mid-June 2023.  Warf responded and cleared up the discrepancy, which confirmed that Valdez stated words were distorting the truth.

54.  On or about July 2023, Defendant Warf responded to one of the Plaintiff's emails, and he **complimented the Plaintiff on her performance**, and asked her about her career plans at Amazon.  The Plaintiff was upfront and honest about the discrimination and inequitable treatment that she has faced at Amazon.  She shared this fact with Defendant Warf.

55.  Moving forward, she took Defendant Warf's compliment to heart and applied for roles that were a match to her skills, education, certification, and experience.  However, instead of catapulting her for growth, the Plaintiff's applications for promotions increased Defendant Valdez' "Playground of Terror" against the Plaintiff.  Within a few months and several incidents of harsh and vicious sabotage and attacks, and despite the discrimination, retaliation, and hostile environment complaints to Amazon leaders

again (even on the day of separation), Gavin Hepburn retaliated against her with a wrongful separation on November 10, 2023.

56.  It is important to mention that shortly after the Plaintiff's July 2023 email to Defendant Warf, Team Manager (which included her statement about discrimination and inequitable treatment); Silvia Valdez, Team Lead, started secretly removing time off the Plaintiff's timecard.  After the Plaintiff complained, the terror increased to frequent attacks, punishments, and an even more aggressive hostile environment against the Plaintiff.  Everything that occurred after this incident caused the Plaintiff to fight for equality and her civil rights.  The defendants' attempts were to **personally** ruin the Plaintiff and her career.

57. The irony with Kevin Warf's involvement, is that he includes on his public profile that he supports and is a member of Human Rights Campaign, *"I am dedicated to promoting Diversity and Inclusion in my personal and professional life."*  However, he took no action to help the Plaintiff, in fact, he participated in the effort to harm her.  Evidence supports this fact.

### NEGLIGENCE - FACTUAL ALLEGATIONS

58.    First, human resources and leadership (supervisors, managers, executives, etc.) not only owe a **legal duty** to the employer, but also to the employees.  As part of vicarious liability, employers and leadership are responsible for the acts of their employees.  Their legal duty is not to violate the laws, regulations, and their own employee policies and employee handbook.  The Defendants acts violated the above-mentioned laws (incorporating by reference paragraphs #1 and #2 contained herein this Complaint), and Amazon Policies and Employee Handbook.  The evidence will also show that the alleged acts against the Plaintiff also crossed a personal boundary, extended to her personal life, when the attacks and sabotage became personal, and therefore, violated her Constitutional Rights as a citizen of the United States of America.

59. All individuals and defendants **breached their legal duty** owed to the Plaintiff under several issues.  They also crossed over into behavior that was as an individual versus a manager, as they personally tried to ruin the Plaintiff.  To personally ruin someone is personal and not work-related.

a.    Incorporating by reference paragraph paragraphs #2 through #193 as contained herein the Amended Complaint.

b.      Silvia Valdez, as a individual and defendant, was the **culprit** of the aggressive, malicious, egregious, wanton, and vicious attacks against the Plaintiff who is a low-paid employee.

c.      As individuals and defendants, Kevin Warf, Gavin Hepburn, Ryan Johnston, Jasmine Kammer, Theunis Kotze, Bethany Reyes; and as defendants Amazon Inc. and Amazon LLC, all are negligent as recorded herein paragraphs #2 through 193, EEOC Charges, employee handbook: "Owner's Manual and Guide to Employment – U.S. - March 2020, and with Plaintiff's evidence.

60.      All named individuals and defendants' behavior of direct actions and/or turning a blind eye towards the Plaintiff are the **proximate cause of harm** that not only executed the inappropriate and inequitably applied single and first disciplinary action against Plaintiff without any due process, but also violated the laws and employee handbook; and was the final act that pushed the Plaintiff to complain about the FLSA violation; file an EEOC charge and lawsuit.  The retaliation of the complaints ultimately led to an extremely hostile work environment; retaliation; wrongful separation; declined unemployment insurance; emotional and physical distress, damages, and other irreparable damages.

61. All named individuals and defendants' **actions are the cause in fact of the harm** that the Plaintiff experienced.  All the individuals made a choice to be part of the problem versus the solution. Their actions were willful and malicious.

a.      The immediate team that Plaintiff was on prior to being abruptly taken off that team and assigned to Silvia Valdez, was a positive and productive team with great harmony.  The Plaintiff was even selected and served as the Team Lead's right-hand person for talking points for the daily meetings for her entire tenure on his team.

b.      The Plaintiff was able to successfully work through three previous Supervisors, where she was able to focus on performance (despite her inferior treatment), however, Silvia Valdez made work life hell for the Plaintiff from approximately July 2023 through November 2023, and the Plaintiff had to constantly worry and figure out how to dodge attacks and failure set-ups by her.  She showed a preference for white-skinned employees.

c.    It was so stressful, that even as a quiet and focused worker, the Plaintiff reached out to others (strangers at Amazon) for support and assistance regarding the actions against her.

d.    The Plaintiff was successful in converting from a seasonal employee to a regular full-time employee, and if it wasn't for Silvia Valdez' actions against the Plaintiff; and her actions supported and/or carried out by all other named individuals and defendants, which violated laws and also represented a lack of due diligence, the Plaintiff wouldn't have experienced all of the damages that followed Valdez' act.

62. In summary, for all the points listed above and under the Seventh Amendment, the Plaintiff is ready to present evidence at a jury trial to show that all named individuals and defendants should be held responsible as a defendant and **as an individual**.  The defendants committed all these acts (incorporating as reference #27 through #93 contained in this Amended Complaint) intentionally and is negligent and isn't working within the scope of the rights granted under the U.S. Constitution.  There is also a lack of human decency, especially after an employee express that they are healing from a personal tragedy.  All defendants and individuals either participated and/or turned a blind eye.

63.  The Plaintiff declines to post details that cause a safety issue:  Civil Conspiracy; Invasion of Privacy; Breach of Contract, unless case is sealed.

### XV.  SUMMARY

64. Plaintiff expressed concerns about discrimination, retaliation, FLSA violations, harassment, inequitable treatment with pay opportunities, etc. on multiple occasions from 2022 through 2023. Plaintiff suffered several adverse employment actions.  The adverse employment actions happened right after complaints.  In fact, the wrongful separation happened the same day as a harassment complaint regarding Gavin Hepburn, but the aggressive actions started against the Plaintiff when she complained about the secret removal of time, FLSA violation.  The other actions always coincided with the Plaintiff using her voice to express her concerns.

65. Instead of resolving these issues after the Plaintiff expressed her concerns about the violation of her statutory rights listed in the complaint, the Defendants used it to make the Plaintiff's work life hell, and when they were unsuccessful in forcing her out, they wrongfully discharged her, after she expressed her FLSA violation concerns on or about August 2, 2023 by filing an Ethics Complaint;

made an official complaint to the EEOC for Title VII violations on September 15, 2023, and filed a lawsuit on October 1, 2023; and complained to corporate about all of these violations, including harassment by Gavin Hepburn and the Equal Pay Act violation regarding additional income opportunities, throughout this same period through November 10, 2023. Their discharge is against public policy.

66. The Defendants not only violated laws, but they also breached their own policies. Everything they did from the point that the Plaintiff caught Defendant Silvia Valdez secretly removing time off her card in late July 2023, was a cover up. Instead of being transparent about their intentions, they kept covering one story up with another. This is against an Amazon entry-level low paid employee, and they treated her as if she needed to be treated like someone involved in President Nixon's Watergate Scandal ("West Coast" Scandal). It was unnecessary and created a lot of damages for the Plaintiff, including the most extreme damage that can never be repaired.

67. The stellar history that she referred to was the fact that the only two women in her career, who really wanted her to succeed, were two African American women. Her work ethic was always demonstrated, and her performance level was consistently high. She helped them to create and change infrastructure for the better. She was loyal and dedicated. These two African American women, leaders in major brands, appreciated those attributes, and both of them called her back to work for them again. At one time, it was a tug-of-war as they both called her for opportunities at the same time. The Plaintiff's experience in HR, makes her believe that it's rare for management not want to move forward with new applicants for various roles, yet these two women both wanted her to work for them again.

68. What Amazon did to attempt to ruin her career needs to set a precedence not just for this case, but for cases to come. It is especially wrong that the Plaintiff was focused on work, continued her great attendance, showed dedication, yet she was constantly attacked and harassed by this management team. It was brutal, and it was PERSONAL. There isn't a business need for setting someone up for personal ruin.

69. The bad faith includes retaliating against the Plaintiff after she filed her complaints; including, but not limited to setting her up for failure; not allowing her to promote; not allowing her to earn additional income; defaming her character; secretly removing time off her timecard; creating a single disciplinary action, because she defended against the defamation to her character; and ending her employment as a result of these complaints.

70. Your Honor, this case is important to the Plaintiff, and she even had to face adversity in getting to a trial, because those with the "gold" make all the rules (their version of Golden Rule).

## XVI.  SUMMARY OF COUNTS

I.       Title VII - 703(a), 42 U.S.C. § 2000e 2(a), U.S.C. § 2000e 3(a), 42 U.S.C. § 2000e 5(k) Racial Discrimination, Harassment, Attorney and Expert Fees

II.      Title VII, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 2000e 5k Retaliation, Attorney and Expert Fees

III.     Title VII, 42 U.S.C. § 2000e - 2 Wrongful Discharge, Attorney & Expert Fees

IV.      28 U.S.C. § 4101 Defamation of Character

V.       § 1983 Defamation

VI.      Negligence

VII.     29 U.S. Code § 207 FLSA - Max Hours

VIII.    29 U.S. Code § 215 FLSA; 29 U.S. Code § 218c(a)(2) - Prohibit Acts; prima facie evidence

VIIII.   FLSA Nonpayment working off the clock

X.       29 U.S. Code § 206(d) Equal Pay Act

XI.      29 U.S.C. § 623(a) et al. Age Discrimination

XII.     42 U.S.C. § 1981 Discrimination

XIII.    42 U.S.C. § 1981 Retaliation

XIV.     29 U.S.C. § 215 FLSA Wrongful Termination in Violation of Public Policy

XV.      42 U.S.C. & 1985 (3). Civil Conspiracy (with others)

XVI.     Blacklisting in multiple states

XVII.    Invasion of Privacy in multiple states

XVIII. Breach of Contract in multiple states

NOTE:  **All Counts** will be provided during Discovery and included with damages.

## XVII.  EVIDENCE

71.  Your honor, the Plaintiff declares that the evidence submitted below is official and authentic evidence that was submitted to the Defendants via Mr. Ryan Johnston on 10/6/23 on 5:48 am CST. It is an email that was written using Google Mail, aka Gmail.  Under perjury and penalty, the Plaintiff submits this evidence.

72.  The hard copy email will be provided during the trial:

*Mr. Johnston,*

*In response to your email on 10/5/23, which was sent the day after I met with Mr. Hepburn, I, of course, professionally disagree with your conclusion.  My civil rights have been violated.*

*This is why I want a neutral party to resolve this matter.  You asserted no retaliation.*

*I will focus on performing my responsibilities based on my high standards.  I agree with your recommendation in terms of changing managers, however, I've been "put in my place", therefore I will have to allow leadership to further tell me "my place".*

*Just like the silent treatment that I experienced from leadership and my colleague, I will work in silence, while I help employees.*

*You can be assured that I won't have a need to send emails to corporate leaders.*

a.  Exhibits 3, 4, and 5 EEOC Charge (6 pages).
b.  Exhibits 1 and 2 – Right to Sue Letter (6 pages).

In closing and relief sought.  The Plaintiff is asking for a **jury trial**. The Plaintiff is seeking the maximum penalties, punitive and compensatory damages; future and back pay (based upon failure to promote rate); lost overtime and double time pay; liquidated damages; itemized list of damages, costs and court and legal costs; reasonable attorney fees; damages for emotional distress; loss of the following:

medical, dental, vision benefits, 401K with company matching; tuition assistance; EAP; Employee Stock Purchase; Anniversary Award, Holidays, vacation and personal time off pay; employee discounts; and all other class F benefits. Also time that Plaintiff dedicated to this lawsuit. The max allowed by law to be covered by the defendants and individuals. Appropriate remedies should be considered for the violation of this tort. The Defendants acted in bad faith, and clear and convincing evidence will be provided.

In closing Your Honor, Plaintiff thanks you for your time spent resolving this matter.

## XVIII. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

In Prayer,

*verified all 37 pages included*

Kris Briscoe, Pro Se
kribrisc@gmail.com (confidential email)
*e-serve requested for all communications.*

By: /s/ Kris Briscoe
Kris Briscoe
Pro Se/Plaintiff
Date of signing: